STATE ex rel. VIG, Appellant, v. LEHMAN, et al., Respondent.

(187 N. W. 720.)

(File No. 4868.     Opinion filed April 10, 1922.     Rehearing denied May 16, 1922.)

1. School Districts—Removal of Schoolhouse, Compel Return to Original Site—Non-ownership of House and Site by District, Immateriality of Fact, Groundowner's Consent Sufficient—Presumption.

The fact that the school district in which a schoolhouse not owned by district and which was standing on a site not owned by it, was not owned by district, is immaterial in a proceeding

by electors to compel school officers to return the building to a site from which it is alleged they wrongfully removed it. The fact that the building and site had been used for many years with consent of owner thereof is sufficient, and in absence of anything to contrary, it is presumed such consent still continues.

2. **Same—Right to Remove Schoolhouse—Vote at Annual Meeting Without Previous Notice, Whether Sufficient—Statute Construed.**

An affirmative vote taken at an annual school district meeting, authorizing the school board to remove any school building in the district, according to their best judgment, no notice of submission of such question to vote having been given in notice of the election, is insufficient to authorize removal of a schoolhouse from one site to another; construing Sec. 7494, Code 1919, authorizing school board to direct removal of schoolhouse to a more convenient location on affirmative vote of majority of electors of district, or on affirmative vote of two-thirds of electors of district voting on proposition at a regular election, or special election called for that purpose, providing notice of proposition shall have been given with election notice; meaning that such proposition may be voted on at either general or special election, provided such notice be given.

3. **Mandamus—Return of Schoolhouse to Original Site From Which Wrongfully Removed, Whether Mandamus Proper Remedy—Statute.**

Mandamus will not lie to undo an act done in violation of public or official duty; hence not applicable to case of proceeding to compel return of schoolhouse by school officers, to a site from which it is alleged it was illegally removed; construing Sec. 3006, Code 1919, authorizing mandamus to compel performance of an act which law specially enjoins as a duty resulting from an office, etc.

4. **Injunction—Return of Schoolhouse to Original Site, Compelling by Mandatory Injunction, Whether Remedy Applicable—Statute, Whether Limiting Equity Jurisdiction—Legislative Power.**

Relief by way of mandatory injunction may be had to compel school district officers to return a schoolhouse to a site from which it is alleged it was illegally removed by them. **Held,** further, that Sec. 2423, Code 1919, abolishing writ of injunction as provisional remedy and submitting therefor injunctional order, was not intended to and does not limit jurisdiction of equity courts under state constitutional provision conferring equity jurisdiction on courts, to give such final relief as equity courts were formerly empowered to give in injunction suits; since chancery remedy was deemed inseparable from the juris-

diction itself, which jurisdiction cannot be taken away or limited by legislation.

Gates, P. J., dissenting.

Appeal from Circuit Court, Meade County. Hon. JAMES McNENNY, Judge.

Application by the State of South Dakota on the relation of Andrew Vig, against E. J. Lehman, Frank Hoval and Martin Schmidt, as members of the School Board of School District No. 89 of Meade County, for a writ of mandamus directing defendants, as members of said Board, to return a school building to the place from which they had removed it. From a judgment denying the writ, plaintiffs appeal. Affirmed.

*John T. Milek,* for Appellant.

*Harry P. Atwater,* for Respondents.

(4) To point four of the opinion, Respondents cited: State ex rel. v. Wilson, 122 Ala. 259, 26 So. 489; Meyer v. San Francisco, 88 Pac. 722.

POLLEY, J. This appeal grows out of a school district squabble in Meade county. The school board moved a building that for several years had been used for school purposes from one part of the district to another. Plaintiff, on behalf of himself and several neighbors, claiming that the provisions of section 7494, Revised Code, relative to the removal of school buildings, had not been complied with, and that the school board had never been legally authorized nor directed to move the said building, and being dissatisfied with the change, applied to the circuit court for a writ of mandamus directing defendants, as members of such school board, to return the said building to the place from which they had moved it. The writ was denied and plaintiffs appeal.

[1] Respondents contended that they were duly authorized to remove the building. They also contend that the school district does not own the said building nor the site from which it was removed, and that therefore the court is without the power to direct the return of the building to the said site without the consent of the owners thereof. But it is immaterial to the issues in this case whether the district owned said building or not. It is conceded that the district had been in possession of both the building and the site, and had been using them for school purposes for something like five years before the building was moved. From

this fact it will be assumed that such use had been with the consent of the owner, and, in the absence of anything to the contrary, it will be presumed that such consent still exists.

[2]   Upon the question of the authority to move the building, the facts are as follows:   The district comprises some 24 Congressional townships.   It contains 23 or 24 school buildings, and from 300 to 400 electors.   The annual school meeting was held in June, 1919.   Notices of the meeting had been posted in several places in the district, but there was nothing in said notices intimating that the question of moving schoolhouses would be acted upon.   Something like 100 electors attended this election, but none of the complainants were present.   At this meeting a motion was made and carried empowering the board to move any schoolhouse in the district, or to build new schoolhouses according to their best judgment, and it was pursuant to the purported authority granted by this motion that defendants moved the building in question.   It appears from the evidence that at each annual meeting held in the district for seven or eight years prior to the meeting held in 1919 a resolution similar to the one just referred to had been adopted.   This is not a sufficient compliance with the requirements of section 7494, Revised Code.   This section provides that:

"The school board shall have power to direct the removal of a schoolhouse to a more convenient location, upon the affirmative vote of a majority of the electors of the entire district, or upon the affirmative vote of two-thirds of the electors of such district voting upon the proposition at any regular election, or special election called for that purpose, providing notice of the proposition for such removal to be voted upon shall have been given with the notice of such election. * * *"

This means that the proposition of moving schoolhouses may be acted upon at either a general or special election, provided notice that such proposition would be acted upon be given with notice of such election.   The removal of a schoolhouse from one part of a district to another is not one of the ordinary proceedings of a school board.   It is an extraordinary proceeding.   The location of a schoolhouse is a matter of very great importance to the patrons of such school.   It appears from the evidence that the schoolhouse involved in this case was more than 3 miles farther

from at least one of the patrons of the school after it was moved than it was before, and from one to three miles farther from several of the others.   Before a matter of so much importance should be acted upon at a school election the interested parties should be notified and given an opportunity to be present, and it was to provide such notice that the provisions of section 7494 were enacted.

[3]   The defendants were wholly without authority to move the schoolhouse from its original site.   But it does not necessarily follow that a writ of mandamus is the proper method of undoing the wrong.   The character of the writ of mandamus and its uses are so clearly defined by section 3006, Rev. Code 1919, that a citation of authorities is unnecessary.   It can be issued only—
"to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station," etc.

But mandamus will not lie to undo an act done in violation of a public or official duty; and that is precisely this case.   In Gow v. Bingham, 57 Misc. Rep. 66, 107 N. Y. Supp. 1011, plaintiff petitioned for a peremptory writ of mandamus to compel Bingham et al. to destroy photographs, measurements, and imprints taken of his person for use in his future identification as a criminal.   It was held that the mode in which the acts complained of were done was wrongful, and in violation of his personal liberty, and would entitle him to damages.   The court, however, held that mandamus was not the proper remedy, saying that:

"In the absence of special statutory authority, a writ of mandamus only lies to compel one to do what ought to be done in the discharge of a public duty, and not to undo what is improperly done, even though it may have been done under the color of performance of public duty."

And the court further said:

"It is with great regret that I have been compelled to come to the conclusion that I cannot afford the relator relief in this form of proceeding."

[4]   That such relief may be obtained by mandatory injunction was held in Itzkovitch v. Whitaaker, 115 La. 479, 39 South. 499, 1 L. R. A. (N. S.) 1147, 112 Am. St. Rep. 272.   And such relief was authorized by this court in Waubay Motor Sales Co. v. Lasell, 32 S. D. 390, 143 N. W. 272, Joyce on Injunction, 103

et seq.   We are of the view that the provisions of section 2423, Rev. Code, are not intended to, and do not in any degree, limit the jurisdiction of courts of equity under the provisions contained in the Constitution of this state conferring equity jurisdiction upon courts to give such final relief as courts of equity were formerly empowered to give in injunction suits.   And this for the reason that the remedy awarded in chancery courts was considered to be inseparable from the jurisdiction itself, which jurisdiction, of course, cannot be taken away or limited by legislative enactment.

The judgment appealed from is affirmed.

GATES, P. J. (dissenting.)·  I agree with the opinion except that portion which holds that mandamus is not the proper remedy.

Section 3006, Rev. Code 1919, provides (italics mine):

"The writ of mandamus may be issued by the Supreme and circuit courts, to any inferior tribunal, corporation, board, or person, *to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station;* or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such inferior tribunal, corporation, board or person."

The law lays upon defendants the duty of maintaining a school.   The majority opinion holds that the removal of the schoolhouse was without authority of law.   It follows that it was the duty of the school board to maintain the school at the original site.   Therefore it follows that the act sought to be enforced is an act which the law specially enjoins as a duty resulting from an office, trust, or station.   I think the judgment of the trial court should be reversed.