AMERICAN RIM & BRAKE, INC.,
Plaintiff and Appellant,

v.

James R. ZOELLNER, Defendant and Appellee. (Nos. 14982 and 15006)

AMERICAN RIM & BRAKE, INC.,
Plaintiff and Appellant,

v.

Douglas R. NORGAARD, Defendant and Appellee. (Nos. 14983 and 15007)

AMERICAN RIM & BRAKE, INC.,
Plaintiff and Appellant,

v.

James F. BUKREY, Defendant and Appellee. (Nos. 14984 and 15008)

Nos. 14982–14984 and 15006–15008.

Supreme Court of South Dakota.

Argued Feb. 12, 1986.

Decided Feb. 26, 1986.

James R. Myers of Simons, Gibbs, Feyder & Myers, Sioux Falls, for plaintiff and appellant.

William C. Garry of Cadwell, Sanford & Deibert, Sioux Falls, for defendants and appellees.

MORGAN, Justice.

Plaintiff American Rim & Brake (American) appeals from a judgment entered by the circuit court on its plea for injunctive relief in which it asked that defendants James R. Zoellner (Zoellner), Douglas R. Norgaard (Norgaard), and James F. Bukrey (Bukrey) be permanently enjoined for a period of one year from accepting or continuing employment with any business that is in competition with American, and that defendants be enjoined from divulging confidential information obtained during the course of their employment with American. We reverse and remand.

Defendants were all employed as sales personnel by American. During their employment with American, defendants as part of their employment signed an agreement which contained the following restrictive covenant:

During the term of this Agreement and for a period of twelve (12) months from the date of the termination of this Agreement, for any cause whatsoever, the Salesman shall not, directly or indirectly, own, manage, operate, join, control, be employed by or otherwise participate or be connected in any manner with, any business that is in competition with the Company within any Territory assigned to the Salesman or within fifty (50) miles of the perimeter of any Territory assigned to the Salesman at any time within twelve (12) months from the termination of this Agreement. The parties acknowledge that the Company has invested substantially in the training of the Salesman and in the development of. (sic) The Salesman agrees that during the term of this Agreement and for a period of one (1) year from the date of the termination of this Agreement, for any cause whatsoever, the Salesman shall not directly or indirectly canvass, solicit or advise any customer or customers on whom he has called in behalf of the Company during the term of this Agreement. This restrictive covenant shall be construed as an agreement independent of any other provision contained herein and shall be enforceable in both law and equity[.]

In addition to its restrictive covenant, the employment agreement contained, in pertinent part, the following nondisclosure clause:

The Salesman agrees not to retain copies of any such information, papers, documents or records for any purpose whatsoever following the termination of his employment and will not, during his employment or thereafter, divulge to anyone confidential information obtained by

him during the course of his employment without the prior written consent of the president of the Company. The Salesman agrees that the use of or divulging of any such information, papers, documents or records or knowledge of Company policies or procedures for any purpose whatsoever would constitute an unfair trade practice and misuse of confidential information due to the disclosures and confidences involved in employment of the nature provided for herein ... The foregoing acknowledgments and agreement relating to confidential information received by the Salesman shall be construed as an agreement independent of any other provisions contained herein and shall be enforceable in both law and equity[.]

In March and April of 1985, defendants voluntarily terminated their employment with American and all entered employment with Power Brake & Wheel Inc. (P.B. & W.), a direct competitor of American. American then filed this action for injunctive relief. After a hearing, the trial court found, *inter alia,* (1) that none of the customers called upon by defendants while employed by American were exclusive customers of American. Some of these customers were also customers of American's competitors. (2) Since terminating their employment with American, defendants have not divulged to anyone confidential information obtained by them during the course of their employment with American. (3) American requires only its outside parts salesmen to sign employment agreements containing a covenant not to compete. American's managers have considerably more knowledge about documents and information considered confidential but are not required to sign such covenants.

Based upon these findings, the trial court concluded, *inter alia,* (1) that American demonstrated that the customer relationship developed by defendants is a legitimate business interest. (2) American failed to meet its burden of proving that enforcement of the restrictive covenant so as to bar defendants completely from employment with P.B. & W. is reasonably

necessary to protect its business interests. (3) American's business interests would be adequately protected if defendants do not solicit or otherwise contact any customer that they contacted during their course of employment with American. (4) The covenant not to compete is unreasonable and unenforceable as a contract in restraint of trade to the extent that it would completely bar defendants from employment. (5) Defendants remain under a duty not to disclose to others or use for their own benefit confidential information obtained during the course of employment with American.

During oral argument before this court, counsel for all defendants and American admitted that defendant Zoellner was no longer employed by P.B. & W. Counsel conceded that Zoellner's present employer is not in competition with American. Thus, the noncompetition clause in the employment agreement is inapplicable. American seeks injunctive relief to prohibit Zoellner from continuing employment with a business competitor. Because of the change in circumstances, this relief cannot be granted. "If.... circumstances have changed so that the appellate court cannot render a judgment which can be made effective, the appeal must be dismissed." *Save Centennial Valley Ass'n v. Schultz,* 284 N.W.2d 452, 455 (S.D.1979). We deem appeals # 14982 and # 15006 regarding Zoellner to be moot, and they are dismissed. We do, however, retain appellate jurisdiction over the appeals involving defendants Norgaard and Bukrey, who are still employed with P.B. & W.

As its first issue, American contends that the trial court erred in modifying the agreement as the covenant not to compete is enforceable under the provisions of SDCL 53–9–11. That statute states:

An employee may agree with an employer at the time of employment or at any time during his employment not to engage directly or indirectly in the same business or profession as that of his employer for any period not exceeding two years from the date of termination of the

agreement and not to solicit existing customers of the employer within a specified county, city or other specified area for any period not exceeding two years from the date of termination of the agreement, if the employer continues to carry on a like business therein.

The trial court determined that even though the noncompetition covenant complied with the language of the statute, it was unreasonable and unenforceable as written in that it was not necessary to protect American's interests to completely bar defendants from employment with a competitor.

■ We note that SDCL 53–9–8 voids contracts which are in restraint of trade as a matter of public policy. SDCL 53–9–11, however, is one of the enumerated exceptions to the general policy. In reading the exception, we must construe it narrowly so as to promote the proscription against general restraints on trade. *1st American Systems, Inc. v. Rezatto*, 311 N.W.2d 51 (S.D.1981).

It is noteworthy that the territorial and temporal limitations in American's noncompetition agreement with defendants nearly parroted the 1984 revision to SDCL 53–9–11 requiring, however, only a one-year abstention rather than two. Defendants argue that SDCL 53–9–11 also requires a trial court to find the noncompetition clause to be reasonable before it may be enforced.

■ The intent of a statute must be derived from the statute as a whole, from its language, and by giving the language its plain, ordinary and popular meaning. *Moulton v. State*, 363 N.W.2d 405 (S.D. 1985). "This court will not enlarge a statute beyond its face where the statutory terms are clear and unambiguous in meaning[.]" *Simpson v. Tobin*, 367 N.W.2d 757, 763 (S.D.1985).

■ The clear import of SDCL 53–9–11 is to except noncompetition agreements from the general proscriptions against restraint on trade, as long as the noncompetition agreements comport with the statutory language. "We assume that statutes mean what they say and that the legislators have said what they meant." *Cresent Elec. Supply Co. v. Nerison*, 89 S.D. 203, 210, 232 N.W.2d 76, 80 (1975). SDCL 53–9–11 allows employers and employees to make exactly the kind of agreement entered into between American and defendants, without a further showing of reasonableness. In *1st American Systems, supra*, we approved the trial court's voiding a noncompetition agreement that exceeded the then statutory limitations. But we then distinguished a nondisclosure agreement as not falling within the restraint of trade prohibition and proceeded to apply the reasonableness test to the nondisclosure agreement under completely different principles not called into issue in this appeal.

■ By way of notice of review, defendants claim that in any event the noncompetition clause in the contract fails because of a lack of consideration. Both defendants were already employed when they signed the employment agreement, and received no additional compensation. It was conceded at oral argument, however, that when originally employed defendants signed an employment contract containing a noncompetition clause in different form. Defendants were asked to sign these contracts containing a less restrictive noncompetition clause following the 1984 revision of SDCL 53–9–11. In light of this, we deem this argument to be without merit, considering SDCL 53–8–7. (Contract in writing may be altered by contract in writing without new consideration.)

As to appeals # 14983, # 14984, # 15007, # 15008, we reverse and remand with directions for the trial court to enter judgment consistent with this opinion.

FOSHEIM, C.J., WUEST, J., and HERTZ, Circuit Judge, acting as a Supreme Court Justice, concur.

HENDERSON, J., concurs in result.

HENDERSON, Justice (concurring in result).

Although I fully concur in the substantive treatment of the issues herein, I can

only vote to concur in result due to the citation of *Moulton v. State,* 363 N.W.2d 405 (S.D.1985) (Henderson, J., dissenting). In said dissent, I assailed this Court's statutory interpretation. Rather, for the general rule on statutory construction and interpretation, I would cite *Oahe Conservancy Subdistrict v. Janklow,* 308 N.W.2d 559 (S.D.1981); and *Wood v. Waggoner,* 67 S.D. 365, 293 N.W. 188 (1940). When arriving at the intention of the legislature, it is presumed that the words of the legislature have been used to convey their ordinary, popular meaning, unless the context or the apparent intention of the legislature justifies any departure from the ordinary meaning. *Oahe; Wood.*